MICHAEL ZIELONKA *vs.* UNITED STATES RUBBER COMPANY.

APRIL 30, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

Flynn, C. J. This is an original petition by an employee to obtain workmen's compensation under general laws 1938, chapter 300. From a decree of the superior court awarding compensation for total disability, the respondent employer has taken an appeal to this court.

The evidence is largely undisputed, although different inferences may be drawn therefrom in certain respects. At the time of the alleged accident the petitioner was fifty years of age and in good health. He had been employed eighteen years by the respondent as a rubber shoemaker, during which time he had suffered no accident and had lost no time.

When the respondent's mill in Woonsocket closed because of the depression, the petitioner subsequently worked for another company, during which time he suffered no mishap or injury. On March 1, 1945 he was re-employed by the respondent and for five months worked at cutting rubber from the blocks or rolls. During that period he sustained no injury.

On July 31, 1945 the foreman changed petitioner's work to that of service man, which required him to lift rolls of rubber from the floor and to place them upon hooks for use by others. Each roll resembled a large spool about 34 inches long and 24 inches in diameter, through the center of which was a steel bar that protruded at either end. The petitioner would lift the bar at one end and place it upon a hook, and then would lift the other end and place it upon another similar hook. The hooks were 18 inches from the floor and when in place the rubber could be rolled off the spools as needed by the cutters. A roll weighed from 200 to 500 pounds each according to the evidence for the petitioner, while other testimony estimated the weight to be 260 to 275 pounds.

In an ordinary day's work the petitioner would lift and place on the hooks about fifty such spools. Since one operation took five or six minutes, he apparently had an opportunity to rest four or five minutes before beginning another. For three days he had done this work without any unusual occurrence or mishap. On the fourth day, August 3, 1945, all the machines became empty at one and the same time. The cutters, who were operating those machines on a piece-work basis and were losing time, joined in demanding stock and began calling "Hurry up, give it to me, give it to me * * *." Under such continuous pressure he hurried to get *all* the rolls in place, putting up one after the other without interruption or rest for two hours. Then, while in a bent-over position and lifting the end of a spool, he developed a sudden sharp pain in his back. He was unable to lift the spool or to straighten up, and walked away from the work "in sort of a deformed position." An immediate report of the occurrence was made to the foreman, and the petitioner was attended by the respondent's doctor who strapped his back.

Several doctors examined or treated the petitioner and they testified either personally or through their reports which were received in evidence without objection. Various diagnoses of the petitioner's injuries were made, but there was evidence to support the conclusion that he suffered a back injury from a ruptured intervertebral disc which would require a serious operation. His average weekly wage at that time, according to the stipulation of the parties, was $36.37 per week.

The decree, entered by the trial justice after the filing of a written decision, contained the findings: "That the petitioner had an accident in the course of his employment and while attending to his work, and received an injury in the back, and that the petitioner has been totally incapacitated since the third day of August, 1945, and that the petitioner is entitled to Twenty Dollars ($20.00) per week

and the doctors' bills incurred by him to the extent that the law allows."

The respondent contends that the findings of the trial justice were predicated upon a misconception or erroneous interpretation of the law; that such misconception necessarily vitiated the findings of fact; and that in any event there is no legal evidence to support a finding that the petitioner received an "injury by accident" within the meaning of the act.

There is ground for respondent's first contention because certain portions of the trial justice's rescript indicate a misconception of the meaning of "injury by accident" as previously interpreted by this court. After making certain findings that the petitioner was injured while performing his work, the trial justice goes on to discuss the purpose of the compensation law by an illustration that referred to cases involving hernia, although that was not the injury complained of in the instant case. Then after mentioning two cases within his own experience, neither of which had been appealed to this court, he further observed: "And so for a court to say that a man must satisfy the Court by credible testimony that he had an accident, or that something unusual on which he can put his finger happened while he was employed may recover, but if it is simply his work he has no right to recover, it seems to the Court it is a little far-fetched."

The pertinent provision of our statute, G. L. 1938, chap. 300, art. II, §1, reads as follows: "If an employee who has not given notice of his claim of common law rights of action, or who has given such notice and has waived the same, as provided in §5 of Article I, receives a personal injury *by accident* arising out of and in the course of his employment, he shall be paid compensation, as hereinafter provided, by the employer who shall have elected to become subject to the provisions of this chapter." (italics ours)

This provision is binding upon litigants and the court. From the beginning, following the example of earlier deci-

sions under the English compensation act from which our act was patterned, this court has taken a liberal view of the words "injury by accident." *Walsh* v. *River Spinning Co.*, 41 R. I. 490; *Gibbons* v. *United Electric Rys.*, 48 R. I. 353; *Mederos* v. *McLeod*, 65 R. I. 177; *St. Goddard* v. *Potter & Johnson Machine Co.*, 69 R. I. 90. Generally speaking, in these and other similar cases this court has approved findings of fact where there was legal evidence to show, directly or by reasonable inference and apart from its weight or credibility, that some unusual circumstances or extraordinary conditions connected with the employment caused or reasonably contributed to cause the injury. We have also held that an injury by accident to the physical structure of the body need not be the result of particular external violence but may result from an internal breaking down of bodily resistance as, for example, from overexertion. See *Barker* v. *Narragansett Racing Ass'n, Inc.*, 65 R. I. 489; *Recchia* v. *Walsh-Kaiser Co.*, 71 R. I. 208. For practical purposes the *Recchia* case perhaps illustrates the limit to which such a liberal construction of the words "injury by accident" may be extended under the act.

However, where the evidence showed merely that the petitioner was injured while doing his regular work in an ordinary way under usual conditions and without the existence of any unusual circumstances or extraordinary conditions of employment causally related to the injury, this court has been unable to find a legal basis upon which to support a recovery under the act. The reason for this is the requirement that we give some effect to the words "injury by accident" as defined in the above-mentioned cases. *Fossum* v. *Fuller Co.*, 70 R. I. 191; *Fuller Co.* v. *Schacke*, 71 R. I. 322; *Spolidoro* v. *United States Rubber Co.*, 72 R. I. 269. Therefore, while we have liberally interpreted the words "injury by accident" as applied to given evidence and findings of fact, we nowhere have held that a person who sustains an injury *merely in the course*

*of his regular employment,* without some further showing of unusual or extraordinary conditions contributing to cause the injury, was nevertheless entitled to recover under the act. To so hold would give the words "by accident" no effect whatever and would amount to striking them from the act. Such a result properly may be effected only by the legislature in the exercise of its policy-making powers. Notwithstanding that this has been pointed out in several decided cases, the legislature to date has not made such an amendment.

In his rescript the trial justice also illustrated the purpose of the act as he conceived it by referring to the method of deciding a case of injury by hernia. As previously stated, the instant case did not involve hernia, and such observation apparently overlooked the fact that the legislature has also included disablement by hernia in the schedule of occupational diseases which are "treated as the happening of a personal injury by accident" within the meaning of the act. G. L. 1938, chap. 300, art. VIII, §2, item 27. In other words, the act now does not restrict compensation for hernia solely to a case where the employee can show that it is the result of a personal injury *by accident* arising out of and in the course of his employment. It also authorizes compensation where it is shown that he has suffered a disabling "Hernia, clearly recent in origin and resulting from a strain," as provided in art. VIII, §2, item 27, of occupational diseases. See *Condon* v. *First National Stores, Inc.,* 65 R. I. 129; *George* v. *Lamson Oil Corp.,* 69 R. I. 81. In our opinion, therefore, the general observations of the trial justice in his rescript concerning the purpose of the act and the meaning of "injury by accident" amount to a misconception of the law.

The next question, however, is whether such misconception so permeated the findings of fact that they necessarily must be vitiated. On this issue there is room for considerable doubt. On the one hand, the observations above mentioned indicate that the misconception of the meaning

of "injury by accident" might have materially influenced the trial justice's consideration of the evidence to the extent that his findings of fact were made in conformity with such misconception of the law. On the other hand, however, he found expressly in his rescript that the petitioner was *not* injured merely in the course of performing his regular work in the usual way but was injured while performing his work under certain *unusual circumstances and conditions,* thereby indicating that he may have applied the correct rule of law in considering the evidence notwithstanding his other observations as to the general purpose of the act.

If the latter conclusion is based upon evidence and findings of the existence of extraordinary conditions that required such unusual and sustained effort as to cause overexertion or its equivalent, the case would come within the rule followed in *Mederos* v. *McLeod* and *Recchia* v. *Walsh-Kaiser Co., supra.* But if the trial justice's findings are based upon a view that the evidence showed merely that the petitioner, after working many years for the respondent, was injured in the course of his employment, without the happening of any accident in the usual sense, and without showing any unusual circumstances or extraordinary conditions of his employment that were causally related to the injury, then the conclusion would be based upon an erroneous view of the law and the case would be governed by *Spolidoro* v. *United States Rubber Co., supra.*

Reading the rescript as a whole it is difficult for us to determine clearly which of these views was actually taken by the trial justice when he was considering the evidence and making the ultimate findings that were incorporated in the decree. In the circumstances, therefore, justice will be better served if the cause is remanded to the superior court where the same trial justice may make the findings of fact that he deems proper upon a reconsideration of the evidence in the instant record in the light of the meaning of "injury by accident" as heretofore interpreted by this

court; and where a decree based on such findings may then be entered.

The respondent's appeal is sustained, the decree appealed from is reversed without prejudice, and the cause is remanded to the superior court for further proceedings in accordance with this opinion.

*Edward F. Dwyer, Irving I. Zimmerman,* for petitioner.

*Higgins & Silverstein, Lewis Z. Lavine,* for respondent.