FRANK ANTONELLI *vs.* WALSH-KAISER COMPANY, INC.

JUNE 20, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto and Baker, J.J.

CAPOTOSTO, J.   This is an appeal by an employee of the respondent from a decree of the superior court denying and

dismissing a petition for compensation under the workmen's compensation act, general laws 1938, chapter 300.

The evidence is undisputed and shows, among other things, the following material facts: Petitioner was seventeen years old when he was injured on February 22, 1945. At about 1 a. m. on that day he was sent to drill some holes in the steel and painted walls of the mast house of a combat cargo boat. The mast house was about four or five feet wide, twenty-four feet long and eight feet high.

When petitioner reached the mast house he found three or four welders at work in that room. There "wasn't much light" and he could not "see the holes" as "there was so much smoke in the room, fumes". After he entered, the door apparently closed to within a few inches of shutting tight, remaining open just enough to allow the welding lines to go through. He remained in this room waiting to start his work for some ten or fifteen minutes, at the end of which time he was affected by the fumes and felt as if he was going to vomit. He then left the room, reported to the "lead man", under whose directions he worked, and asked for another job.

Petitioner was thereupon sent by the lead man to work on the lower deck in a room that was some twenty feet in length by twelve or fifteen feet wide. Here he had to wait for about fifteen minutes for a "grinder, bumper crew" to finish their work before he could start drilling. While waiting, pacing up and down the room, he became dizzy and felt like vomiting, whereupon he called for aid. What happened next he was unable to state for he "passed out" and when he "came to" he was in a hospital.

The medical evidence consisted of the hospital record, the testimony of Dr. Ernest A. Burrows, who attended the petitioner at the hospital and has treated him ever since, and Dr. Clifton B. Leech, who examined him for respondent's insurer. Dr. Leech did not testify, but his report to the insurer was admitted in evidence by agreement.

In general and ordinary language the hospital record shows that petitioner's injury resulted in a partial paralysis

of the right side. His condition was diagnosed as due to "Subarachnoid hemorrhage of undetermined origin".

Doctor Leech's report expresses no opinion as to the cause of petitioner's injury. His conclusion from the examination, which is set out in detail in his report of July 12, 1945, is as follows: "Opinion. I found no evidence of cardiovascular disease and no evidence of circulatory failure either central or peripheral."

The uncontradicted testimony of Dr. Burrows is controlling in this case. Since the decision of the trial justice for the respondent is based entirely upon the doctor's testimony as to the proximate cause of injury, we have read and considered that testimony with great care, having in mind that if such testimony is reasonably open to the inference that the doctor attributed the injury to a mere possibility, as the trial justice found, then such finding is based upon legal evidence and is conclusive upon us, for in such a case we are not concerned with the weight of the evidence, as this court has repeatedly stated in numerous instances.

After full consideration of Dr. Burrows's testimony we are convinced that the trial justice misconceived that testimony. This physician's admission, under skillful cross-examination, that the rupture of an aneurism on a blood vessel *might* have caused the injury, without any evidence in the record before us as to what an aneurism is or that the petitioner had any such affliction, was mere speculation in this case. As a prudent practitioner, Dr. Burrows admitted that such a condition was medically possible, and that he had such a possibility in mind in reaching his opinion, to which he firmly adhered, namely, that in this case the inhalation of fumes, probably carbon monoxide, increased the inner cranial pressure enough to bring on hemorrhage of the brain, which injured and disabled the petitioner.

This medical opinion, which is clear if Dr. Burrows's testimony is carefully read and attention is not diverted by collateral matter premised upon a mere possible medical condition as to which there is no proof, leaves the decision of

the trial justice unsupported by any legal evidence, direct or by way of reasonable inference, and further leaves the evidence of Dr. Burrows as to probable causation uncontradicted. In this situation the finding of the trial justice amounts to an error of law and will be reviewed on appeal. *Jillson* v. *Ross*, 38 R. I. 145; *Foy* v. *Juilliard & Co., Inc.*, 63 R. I. 233, 240; *Pepe* v. *American Silk Spinning Co.*, 70 R. I. 309, 318. In our judgment the only legal evidence in the instant case establishes causal connection between the accident and petitioner's injury, thereby entitling him to compensation under the act.

The employee's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court for further proceedings.

*Fred Brosco*, for petitioner.

*Henry M. Boss*, for respondent.