Lucy FALVEY

v.

**WOMEN AND INFANTS HOSPITAL.**

No. 89–316–A.

Supreme Court of Rhode Island.

Jan. 10, 1991.

John Harnett, Marc B. Gursky, Providence, for plaintiff.

John T. Duffy, Gallagher & Gallagher, Gerard S. Lobosco, Edwin H. Hastings, Tillinghast, Collins & Graham, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court by writ of certiorari on the petitioner's appeal from a decision of the Workers' Compensation Appellate Commission. The Appellate Commission affirmed the trial commissioner's award of workers' compensation benefits to the petitioner for the closed period between August 1, 1986, and August 20, 1986. We affirm.

On July 31, 1986, Lucy Falvey (petitioner) injured her back while moving a wooden conference table with a coworker. The petitioner was employed as an executive secretary by Women and Infants Hospital (respondent) at the time of her injury. She felt a muscle strain in her back fifteen to twenty minutes after moving the table. The petitioner went to the employee health clinic where she was given Robaxin, a skeletal muscle relaxant, to reduce her lower-back strain. The petitioner also filled out an employee-incident report, dated July 31, 1986, in which she wrote that she was "carrying tables from conference room" when she sustained her injury. The petitioner visited the employee health clinic again on August 8, 1986, with the medical notes indicating that she "[f]eels much better" and that the "[m]uscle relaxants [had] relieve[d][the] stiffness." She also visited the employee health clinic on August 20, 1986, with the medical notes offering no indication of a continued lower-back strain.

The petitioner felt a numbness in her left leg on August 1, 1986, the day after moving the table. This numbness grew progressively worse, culminating in the week of October 12, 1986, when petitioner was unable to get out of bed and walk using the

leg. She has not returned to work since the week of October 12, 1986.

The petitioner conceded that she did not mention any work-related injury to respondent while she continued to work between August 1, 1986, and October 12, 1986, contending that she was afraid of her employment being terminated. In fact petitioner's first mention of any injury to respondent, aside from the July 31, 1986 employee-incident report, came on October 12, 1986, when she telephoned respondent and stated that she would be out of work for several weeks. She did not specify to respondent that any work-related incident was the cause of her absence. Moreover, petitioner telephoned respondent at least two times subsequently to her initial October 1986 telephone call, apparently as late as December 1986, without mentioning any work-related incident as the cause of her continuing absence.

On February 17, 1987, petitioner filed a request for an informal hearing concerning workers' compensation benefits. The petitioner's request for workers' compensation benefits was denied, and she appealed to the Workers' Compensation Commission.

The trial commissioner heard the testimony of petitioner. Significantly, petitioner testified concerning her extensive prior history of back problems. The petitioner testified that Dr. Frederic Catucci performed two laminectomies on her, the first in 1971 and the second in 1972. She was subsequently treated by Dr. Catucci for a period of five years, through 1977, during which time she remained out of work for several years.

The trial commissioner also heard the live testimony of Dr. John Strom and reviewed the deposition of Dr. David Barry. Doctor Strom testified that he had been treating petitioner since September 1985 for migraine headaches, nose and throat problems, numbness and tingling of the hands, and possible carpal tunnel syndrome. He testified that he examined petitioner on September 26, 1986, at which time there were complaints of pain in petitioner's left hip and stiffness in her left leg. Doctor Strom testified that petitioner mentioned moving the table at work in the course of the examination.

Doctor Strom testified that as of October 1986, he thought petitioner may have been suffering from a recurrent disc, a flareup of her old disc problems, or rheumatoid arthritis. The trial commissioner was not persuaded by Dr. Strom's testimony concerning the causal relationship between petitioner's moving the table on July 31, 1986, and her present problems. The trial commissioner stated:

"The doctor waxed and waned as to the causal relationship, saying [lifting the table] could be [the cause] and after redefining the question, indicating *it might be possible. He clearly stated it is not a clear-cut case.*" (Emphasis added.)

The trial commissioner found Dr. Barry's deposition no more compelling than the live testimony of Dr. Strom. Doctor Barry initially examined petitioner on January 20, 1987, taking a history of her two prior laminectomies and subsequent treatment. He conceded that petitioner gave him no history of moving the table during this initial visit. Instead, petitioner stated that her problems were something that developed over a period of time, several months earlier. Despite Dr. Barry's lack of knowledge at the time of his examination concerning petitioner's moving the table, he testified in response to a hypothetical question that petitioner's problems were causally related to her moving the table on July 31, 1986. However, Dr. Barry later testified that, relying upon the medical history given him at the time of his examination, the testing performed on petitioner, and her negative CAT scan, he was of the opinion that one of the two possible causes of petitioner's problems was a build-up of scar tissue from her prior laminectomies. The other possibility was a recurrent disc. Doctor Barry testified that he was not able to determine which of the two possibilities caused petitioner's problems.

After a review of the evidence, the trial commissioner awarded petitioner workers' compensation benefits for a partial disability for the closed period between August 1, 1986, and August 20, 1986. The trial com-

missioner found that "any disability she suffered subsequent to August 20, 1986 is not the result of a work-related injury but more probably the result of her own prior medical profile."

The petitioner appealed the trial commissioner's award to the Workers' Compensation Appellate Commission. The Appellate Commission found that petitioner's reasons of appeal lacked the statutorily required level of specificity and therefore dismissed her reasons of appeal as without merit.

On appeal to this court petitioner asserts that the Appellate Commission erroneously concluded that her reasons of appeal failed to meet the statutorily required level of specificity. Moreover, petitioner contends that the trial commissioner erroneously found that petitioner's partial incapacity ended on August 20, 1986.

We have frequently stated that the duty of this court on appeal from the Workers' Compensation Commission is to review the record to determine whether any legally competent evidence exists to support the commission's findings. If such evidence exists, the commission's findings are binding upon this court absent fraud. *Carter v. ITT Royal Electric Division*, 503 A.2d 122, 124 (R.I.1986).

■ We first address petitioner's assertion that the Appellate Commission erroneously concluded that her reasons of appeal failed to meet the statutorily required level of specificity. We have stated that the Appellate Commission "generally may not consider an issue unless that issue is properly raised on appeal by the party seeking review." *State v. Hurley*, 490 A.2d 979, 981 (R.I.1985). To that end, G.L.1956 (1986 Reenactment) § 28–35–28 requires that the party seeking review file "reasons of appeal stating *specifically* all matters determined adversely to him [or her] which he [or she] desires to appeal." (Emphasis added.)

The petitioner filed the following two reasons of appeal with the Appellate Commission:

"1. The decree is against the law and the evidence in that the Trial Commissioner failed to award ongoing compensa-

tion in his decree it being incumbent upon him to do so under the law of the *Suffoletta case*, which held to effect that once a Commissioner finds incapacity the burden will then shift to the employer to show incapacity, and in the case at bar, there was nothing to substantiate the fact that any disability after August 20, 1986 was unrelated to the incident of moving the table at work on July 31, 1986.

"2. The decree is against the law and the evidence in that the uncontradicted testimony clearly establish that the employee be renamed and disabled subsequent to August 20, 1986 as a result of her original injury and the sequelae there from."

The Appellate Commission stated, "We have carefully examined the record in light of the petitioner's reasons of appeal. We are unable to ascertain from the above reasons of appeal in what manner or where in the record error is alleged."

After our own review of the record, we find sufficient legally competent evidence to support the Appellate Commission's finding that petitioner's reasons of appeal failed to meet the statutorily required level of specificity. We emphasize that petitioner's reasons of appeal did not meet the statutorily required level of specificity merely because the Appellate Commission was able to discern from them that "[t]he thrust of the petitioner's appeal is that the trial commissioner erred in failing to award compensation subsequent to August 20, 1986." The Appellate Commission's recognition of the general result desired by petitioner does not relieve her of the burden of specifying in what manner or where in the record the trial commissioner allegedly erred.

We believe petitioner has failed to meet this burden because her confusing and poorly drafted reasons of appeal prevented the Appellate Commission from comprehending in what manner or where in the record the trial commissioner allegedly erred. The petitioner's reasons of appeal are reminiscent of those offered in *Bisson-*

*nette v. Federal Dairy Co.*, 472 A.2d 1223, 1226 (R.I.1984), wherein we stated:

"[T]he employee's reasons of appeal were nothing more than general recitations that the decree was against the law and the evidence and that the trial commissioner placed an untenable burden on the employee. The commission, therefore, properly concluded that the reasons of appeal filed by the employee were without merit."

The petitioner's reasons of appeal in the matter before us similarly offer general recitations of error supported by confusing, nonspecific allegations in addition to an improper citation and incorrect characterization of our decision in *Suffoletta v. Ricci Drain Laying Co.*, 113 R.I. 114, 319 A.2d 19 (1974). We believe the Appellate Commission therefore correctly dismissed petitioner's reasons of appeal as without merit.

▮ Notwithstanding the above conclusion, we shall briefly address petitioner's second contention that the trial commissioner erroneously found that petitioner's partial incapacity ended on August 20, 1986.

Our review of the record reveals that the most significant evidence before the trial commissioner included the testimony of Dr. Strom, the deposition of Dr. Barry, petitioner's employee-incident report, and petitioner's employee-health-clinic reports. The trial commissioner found the testimony of Dr. Strom and the deposition of Dr. Barry unpersuasive, as he stated that "[i]t is clear that Dr. Strom and Dr. Barry were not able to definitively testify as to the probable or possible consequence of this work-related incident and clearly waxed and waned throughout the testimony." We agree with the trial commissioner that the testimony of Dr. Strom and the deposition of Dr. Barry were unpersuasive in that their opinions failed adequately to establish a causal relationship between petitioner's moving the table and her subsequent problems.

Conversely, the trial commissioner found that "[t]he most accurate evidence presented in this matter * * * is the employee incident report and the medical travel from July 31, 1986 up through August 20, 1986." We agree with the trial commissioner and find that this evidence is sufficiently legally competent to support his finding that the petitioner's partial incapacity ended on August 20, 1986.

For these reasons the petitioner's petition for certiorari is denied, the writ previously issued is quashed, the final decree of the Appellate Commission is affirmed, and the papers of the case are remanded to the Workers' Compensation Commission with our decision endorsed thereon.

FAY, C.J., did not participate.